IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MELISSA WALSH, | CV. 06-1581-AS |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CALVIN PRESBYTERIAN CHURCH OF TIGARD, OREGON, an Oregon non-profit corporation, and TROY LUTZ, individually and in his official capacity, | |
| Defendants. | |

ASHMANSKAS, Magistrate Judge:

Defendants Troy Lutz ("Lutz") and Calvin Presbyterian Church of Tigard, Oregon ("Defendant Church") (collectively referred to as "Defendants"), move for summary judgment on all claims asserted against them by plaintiff Melissa Walsh ("Plaintiff").

Plaintiff alleges three common law tort claims against Defendant Lutz: battery, breach of fiduciary duty, and intentional infliction of emotional distress ("IIED"). Plaintiff alleges these same claims against Defendant Church under a theory of vicarious liability. For the reasons set

1

forth below, the court grants Defendants' motions for summary judgment on the breach of fiduciary duty and IIED claims. Plaintiff voluntarily dismisses the battery claim against Defendant Lutz. Consequently, the battery claim against Defendant Church is also dismissed. Both are dismissed with prejudice. Plaintiff also voluntarily dismisses the claim of negligent supervision asserted against Defendant Church. This claim is dismissed with prejudice.

Plaintiff alleges four additional claims against Defendant Church: sexual harassment (hostile work environment); sexual harassment (quid pro quo); retaliation; and retaliatory (wrongful) discharge. For the reasons set forth below, the court grants Defendant Church's motion for summary judgment on Plaintiff's claim for sexual harassment (quid pro quo). The motions for summary judgment on the remaining claims – sexual harassment (hostile work environment, retaliation and retaliatory discharge – are denied.

## FACTUAL BACKGROUND

Plaintiff and Defendant Lutz are both former employees of Defendant Church. Defendant Lutz was employed as Director of Youth Ministries from August 1998 to February 7, 2006. Defendant Lutz, who was not an ordained minister, was responsible for the Youth Ministry Program. This program served members of Defendant Church in the seventh through twelfth grades. Defendant Lutz was directly supervised by Pastor Dale Southorn.

Prior to her employment at Defendant Church, Plaintiff was a member of Defendant Church and participated in the Youth Ministry. In 2002, after graduating from high school, Plaintiff became a youth intern at Defendant Church and was directly supervised by Defendant Lutz. In 2004, Plaintiff was hired as Assistant to the Director of Youth Ministries, again supervised by Defendant Lutz. This was a non-ordained position. At this time, Plaintiff signed a

document acknowledging that she had received, reviewed and understood Defendant Church's Sexual Misconduct Policy. She did not receive any additional training or instruction on the policy.

By October 2002, Plaintiff and Defendant Lutz had developed a relationship wherein she saw him as a mentor, close friend and father figure. However, in October 2005, Defendant Lutz told Plaintiff that his feelings for her had developed into romantic feelings. This was the first time Defendant Lutz had made statements of this kind. Plaintiff was twenty-two years old. Defendant Lutz continued to express these feelings in conversations, letters and emails. Plaintiff never responded in kind. The extent of the physical contact between Plaintiff and Defendant Lutz was limited to hand-holding, hugging, and a kiss on Plaintiff's forehead. Also, in October 2005, Defendant Lutz told Plaintiff that if anyone found out about his advances, Plaintiff's job and future in youth ministry could be at risk. Defendant Lutz never mentioned this risk to Plaintiff again. In the meantime, Pastor Southorn met with Defendant Lutz three times to discuss, specifically, the need for Defendant Lutz to maintain appropriate boundaries in his relationship with Plaintiff.

Plaintiff did not report this conduct to Defendant Church until February 7, 2006, when Plaintiff and her mother met with Pastor Southorn and reported Defendant Lutz's conduct. That same day Defendant Lutz was given the opportunity to resign and he chose to do so. The parties agree that Defendant Lutz's advances violated Defendant Church's policy on sexual misconduct. Plaintiff continued her employment with Defendant Church as Assistant to the Director of Youth Ministries. Pastor Southorn assumed the position of Director and became Plaintiff's direct supervisor. Both sides admit that conflicts developed between Plaintiff and Pastor Southorn

during the course of this employment relationship.

On April 25, 2006, Plaintiff failed to appear as expected at a scheduled staff meeting that day and a youth committee meeting that evening. The following day, April 26, 2006, Defendant Church received a letter from Plaintiff's attorney stating her intention to pursue claims "against the Church [including] sexual harassment, retaliation, vicarious liability for Mr. Lutz's torts, and negligent supervision." (Southorn Aff., Ex. 1G at 1.) In addition, Plaintiff's attorney "[proposed] that [Plaintiff] be placed on an indefinite paid leave of absence." Id. at 6. That afternoon, Reverend Wiggers left a voice message for Plaintiff wherein he stated that Defendant Church "[was] not in a position to respond favorably" to her request for a paid leave of absence. (Fish Decl., Ex. 13 at 1.) Following this phone call, Reverend Wiggers spoke with Plaintiff's attorney. Reverend Wiggers refused to give Plaintiff an indefinite paid leave of absence and Plaintiff's attorney stated that claimant no longer intended to work at Calvin Presbyterian Church. Defendant Church alleges that Plaintiff ended her employment with Defendant Church by refusing to return to work if not granted an indefinite paid leave of absence. Plaintiff maintains that she was terminated.

Defendant Church informed the congregation that Plaintiff would no longer occupy the position of Assistant to the Director of Youth Ministries. Defendant Church also advised some congregants to end or limit their contact with Plaintiff, for reasons that are in dispute.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law on the issue. T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

### I. First and Second Claims for Relief – Breach of Fiduciary Duty

Defendant Lutz moves for summary judgment against Plaintiff's claim for breach of fiduciary duty. Plaintiff alleges she had a confidential relationship with Defendant Lutz and that he abused this relationship and attempted to manipulate plaintiff into having a sexual relationship with him. (Complaint at 6.) Plaintiff cites Erickson v. Christenson, 99 Or. App. 104, 106 (1989), for the proposition that a pastor/parishioner relationship has been recognized by the Oregon Court of Appeals as belonging to the subset of relationships defined as "confidential." This case is distinguishable from the present case. First, the relationship in

5

Erickson was between a pastor and parishioner. Here, however, Defendant Lutz was the Director of Youth Ministries at Defendant Church and Plaintiff was the Assistant to the Director of Youth Ministries. Defendant Lutz was plaintiff's direct supervisor, not her pastor. The conduct giving rise to the alleged harms arose from their work and personal relationships, not the relationship between a pastor and parishioner.

Second, Erickson is factually at odds with this case. Not only was the pastor in Erickson successful in coercing the plaintiff into a sexual relationship, the plaintiff was a minor child, thirteen years of age. Id. The changing relationship between Plaintiff and Defendant Lutz – from father figure to friend to attempted seducer – however unsavory, is not sufficient to establish a special relationship for purposes of Plaintiff's claim for breach of fiduciary duty. "[T]he law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf. Bennett v. Farmers Ins. Co. of Oregon, 332 Or. 138, 162 (2001). Plaintiff and Defendant Lutz were not parties to such a relationship. Defendant Lutz's motion for summary judgment on Plaintiff's claim of breach of fiduciary duty is granted. Accordingly, defendant Church's motion for summary judgment on this claim is also granted.

## II.     Third and Fourth Claims for Relief – Intentional Infliction of Emotional Distress

Defendant Lutz moves to dismiss plaintiff's claim of IIED. Plaintiff alleges that defendant Lutz's "outrageous actions, in manipulating his confidential relationship with Plaintiff in order to coerce her into having sexual relations with him and threatening Plaintiff with termination for disclosing this conduct, constitute an extraordinary transgression of the bounds of socially tolerable conduct." (First Amended Complaint at 9.) "Whether conduct constitutes

6

an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." Harris v. Pameco Corp., 170 Or. App. 164, 171 (2000).

The standard for determining what is an "extraordinary transgression of the bounds of socially tolerable conduct" is outlined in Rosenthal v. Erven, 172 Or. App. 20, 23 (2001). "Whether conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-case basis, considering the totality of the circumstances. We consider whether the offensiveness of the conduct exceeds any reasonable limit of social toleration, which is a judgment of social standards rather than of specific occurrences." (internal citations omitted.) Also, the nature of the relationship between plaintiff and defendant is relevant to determining "whether [the] conduct was so offensive to be outrageous." Erickson, 99 Or. App. at 107-108. Here, Plaintiff and Defendant Lutz, as employee and supervisor, had a relationship that potentially heightened the outrageousness of the conduct.

Even so, the specific conduct Plaintiff alleges is insufficient to establish a prima facie claim for IIED. The court adopts Defendant Lutz's analysis of the IIED issue: "assuming for the purpose of this motion for summary judgment, that Plaintiff did not welcome his attentions, Defendant Lutz's conduct, while clearly inappropriate for a supervisor, does not rise to the level of outrageousness required to support and IIED claim." (Def. Lutz's Mot. for Summ. J. at 15.) Defendant Lutz's motion for summary judgment on IIED is granted. Accordingly, Defendant Church's motion on this claim is also granted.

### III.     Fifth and Sixth Claims for Relief – Battery

Plaintiff voluntarily dismisses the battery claim against Lutz. Consequently, the battery claim against Defendant Church is also dismissed. These claims are dismissed with prejudice.

7

## IV.     Seventh Claim for Relief – Sexual Harassment (Hostile Work Environment)

Defendant moves for summary judgment on plaintiff's hostile work environment claim "An employer is vicariously liable 'for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.'" Hardage v. CBS Broadcasting, Inc. 427 F.3d 1177, 1183 (9th Cir. 2005) (quoting Montero v. AGCO Corp., 192 F.3d 856, 861 (9th Cir. 1999)).  A hostile work environment is created "when sexual harassment is sufficiently severe or pervasive to 'alter the conditions of the victim's employment and create an abusive working environment.'"  Id. (quoting Montero, 192 F.3d at 860.)

Defendant Church bases its motion for summary judgment on the affirmative defense articulated in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  This affirmative defense provides that, where there is no tangible employment action resulting from the sexual harassment, the employer can avoid liability by satisfying two elements:  "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Ellerth, 524 U.S. at 765.  Where both prongs of the defense are satisfied the employer avoids liability.

First, a genuine issue of material fact exists as to whether Defendant Church failed to exercise reasonable care or failed to correct Defendant Lutz's sexually harassing behavior. Defendant Church saw fit, on three separate occasions, to meet with Defendant Lutz and caution him about boundaries in his relationship with Plaintiff.  Second, a genuine issue of material fact exists as to whether Plaintiff acted unreasonably in failing to take advantage of the preventative

and corrective mechanisms provided by Defendant Church. Here, Defendant Lutz insinuated that Plaintiff's job was at risk if she reported the harassment. Also, Plaintiff reported the behavior after only four months, while she attempted to avoid the harm by managing her complex relationship with Defendant Lutz. For the above reasons, Defendant Church's motion for summary judgment is denied.

## V.     Eighth Claim for Relief – Sexual Harassment (Quid Pro Quo)

To present a prima facie claim for quid pro quo sexual harassment under Title VII, a plaintiff must show that the harassment resulted in a tangible employment action. In other words, that a supervisor "explicitly or implicitly conditioned a job, a job benefit or the absence of a job detriment, upon an employee's acceptance of sexual conduct." Nichols v. Frank, 42 F.3d 503, 511 (9th Cir. 1994). In addition, the plaintiff must show that a tangible employment action actually resulted – that either that plaintiff refused to comply with the demand and was punished, or that plaintiff complied with the demand and avoided punishment. Where a tangible employment action is taken, vicarious liability attaches to the employer as a matter of law. Ellerth, 524 U.S. at 765. "Under the [Supreme] Court's Faragher/Ellerth decisions, such unconditional liability attaches only if a quid pro quo threat is implemented by some form of sufficiently concrete employment action. An unfulfilled, or inchoate, quid pro quo threat by a supervisor is not enough; something more is required." Holly D. v. California Institute of Technology, 339 F.3d 1158, 1170 (9th Cir. 2003). The Ninth Circuit held in Craig v. M&O Agencies, Inc., 496 F.3d 1047, 1054 (9th Cir. 2007), that where a claimant "did not acquiesce to [her supervisor's] demands [and] was neither demoted or fired, nor did she suffer any other tangible employment action . . . [claimant] has not made out a prima facie case for liability under

9

Title VII on a theory of quid pro quo harassment." 496 F.3d 1047 at 1054 (internal quotations marks omitted).

In Faragher and Ellerth, the Supreme Court took a close look at Title VII sexual harassment claims and vicarious liability of an employer. "One case involved a threat of material employment-related action that the supervisor failed to implement in any respect, and in the other, no such threat or, indeed, employment action fo any kind, transpired; all that occurred was the establishment of a hostile work environment in the traditional pre-Faragher/Ellerth sense of the term." Holly D. v. California Institute of Technology, 339 F.3d 1158, 1168 (9th Cir. 2003). "In neither case, the Court concluded, did a 'tangible employment action' occur." Id.

Plaintiff alleges that a tangible employment action occurred when she acquiesced to Defendant Lutz's threat, not by engaging in sexual conduct with defendant Lutz, but by keeping quiet about defendant Lutz's behavior. In doing so, Plaintiff "continued to be subjected to unwelcome sexual overtures and demands" for four months. (Pl.'s Mem. in Opp. at 31.) However, these facts do not establish the elements of a quid pro quo claim. Plaintiff neither participated in sexual activity to avoid punishment nor was she punished for refusing to participate in sexual activity. For the above reasons, Defendant Church's motion for summary judgment as to quid pro quo sexual harassment is granted.

**VI.    Ninth and Tenth Claims for Relief – Retaliation and Retaliatory Discharge**

Defendant moves for summary judgment on Plaintiff's claims of retaliation and retaliatory discharge. To state a prima facie case of retaliation, the Plaintiff must show that: (1) she engaged in a protected activity; (2) the employer subjected her to adverse employment action; and (3) that there is a causal link between the protected activity and the employer's

action. Hashimoto v. Dalton, 118 F.3d 671, 679 (9th Cir. 1997), cert. denied, 523 U.S. 1122 (1998). The Ninth Circuit held: "only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (citing Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000)).

Examples of non-trivial employment actions include "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." Brooks, 229 F.3d at 928. A plaintiff seeking to establish a prima facie case of retaliation under ORS 659A.030(1)(f) must establish the same elements as are required under Title VII. See Harris v. Pameco Corp., 170 Or. App. 164, 178-79 (2000).

Defendant Church alleges, in the alternative, that it is immune from liability for retaliation and retaliatory discharge because Plaintiff falls under the ministerial exception to Title VII.

> "In recognition of the tension between the statutory protection Title VII provides to victims of sexual harassment and the constitutional protection religious institutions enjoy under the First Amendment, courts have crafted a 'ministerial exception' to Title VII 'in order to insulate the relationship between a religious organization and its ministers from constitutionally impermissible interference by the government.'"

Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 (9th Cir. 2004) (citing Bollard v. Calif. Province of the Soc'y of Jesus, 196 F.3d 940, 945 (9th Cir. 1999)). This exception gives religious institutions the freedom to base ministerial employment decisions on grounds that are impermissible under Title VII. Here, Defendant Church claims that Plaintiff qualifies for the ministerial exception and Defendant Church is exempt from judicial scrutiny in these matters.

This argument fails for two reasons. First, Plaintiff was not a minister. She was neither

11

ordained, nor was her job function sufficiently "ministerial" to qualify for this exception. Elvig, 375 F.3d at 958. Second, even if Plaintiff were a minister, the ministerial exception would not totally foreclose a Title VII claim of sexual harassment. As the Ninth Circuit wrote in Elvig: "[Plaintiff] may, consistent with the First Amendment, attempt to show that she was sexually harassed and that this harassment created a hostile work environment. This showing would, after all, involve a purely secular inquiry. Assuming [Plaintiff] can prove a hostile work environment, the Church may nonetheless invoke First Amendment protection from Title VII liability if it claims that her subjection to or the Church's toleration of sexual harassment was doctrinal." 375 F.3d at 959 (internal citations omitted). Here, Defendant Church allege the harassment was doctrinal. Accordingly, Plaintiff's allegation does not involve "an inquiry into the Church's *decision* to terminate [Plaintiff]" and are therefore not protected from judicial scrutiny by the ministerial exception. Id. (emphasis in original).

Here, Plaintiff has demonstrated that her claims for retaliation and retaliatory discharge present a genuine issue of material fact. Therefore, Defendant Church's motions for summary judgment are denied.

### VII. Eleventh Claim for Relief – Negligent Supervision

Plaintiff voluntarily dismisses the claim of negligent supervision asserted against Defendant Church. This claim is dismissed with prejudice.

### VIII. Twelfth and Thirteenth Claims for Relief – Wage Claims

Defendant Church moves for summary judgment on Plaintiff's wage claims. First, Defendant Church attempts to apply the ministerial exception to Plaintiff's wage claims. However, the ministerial exception does not apply to Plaintiff for the reasons cited above and the

motion is denied.

Next, Defendant Church moves for partial summary judgment on Plaintiff's wage claims alleging they are barred by the statute of limitations. Under both state and federal law, the statute of limitations to recovering unpaid overtime wages is two years. ORS 12.110(3), 29 U.S.C. § 255. The court adopts Defendant Church's reasoning that Plaintiff is not entitled to recover unpaid wages prior to July 27, 2005, and grant the motion as to wages prior to that date. (Def.'s Mot. for Summ. J. at 7.) Finally, Defendant Church moves for partial summary judgment on the twelfth and thirteenth claims, arguing that Plaintiff seeks a double recovery. Plaintiff concedes that she is only entitled to recover a single penalty. Accordingly, Defendant Church's motion is granted.

## **CONCLUSION**

For the reasons stated, Defendant Lutz's motions for summary judgment on the breach of fiduciary duty, IIED, and battery claims are GRANTED. Defendant Church's motions for summary judgment on the breach of fiduciary duty, IIED, battery, sexual harassment (quid pro quo), negligent supervision claims are GRANTED. Defendant Church's motions for partial summary judgment on the wage claims are GRANTED. Defendant Church's motions for summary judgment on sexual harassment (hostile work environment), retaliation, and retaliatory discharge are DENIED.

DATED this 26th day of October, 2007.

    /s/ Donald C. Ashmanskas  
DONALD C. ASHMANSKAS  
United States Magistrate Judge